THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOHN DORAN, Defendant-Appellant.

First District (1st Division)   No. 1—92—3964

Opinion filed November 8, 1993.

Tod Urban, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Lou Anne Corey, and Michael B. McHale, Assistant State's Attorneys, of counsel), for the People.

JUSTICE CAMPBELL delivered the opinion of the court:

Following a jury trial in the circuit court of Cook County, defendant John Doran was found guilty of one count of aggravated battery. Defendant was sentenced to three years' imprisonment and now appeals.

The record on appeal indicates the following facts. Mohammed Afshar testified that on May 13, 1990, he was employed as a doorman for the Hollywood Towers at 5701 North Sheridan Road in Chicago, Illinois. Afshar testified that his job entailed releasing locked doors to admit known tenants by pressing a buzzer behind his desk. This desk was located in a lobby that connected the ground floors of the two towers. Afshar would also "buzz" tenants to obtain permission for guests to enter the building.

Afshar testified that he began his shift at 8 a.m. on May 13, 1990. According to Afshar, defendant entered the lobby from the north tower at approximately 9:10 a.m. on the date at issue. Afshar had seen defendant many times before. Defendant appeared to be angry and spit on the floor as he approached the doorman's desk. Afshar testified that defendant called him a "motherfucker," "son of a bitch" and a "Puerto Rican Mexican asshole." Defendant accused Afshar of "buzzing" his apartment, which Afshar denied.

Afshar testified that defendant grabbed him by the shirt and punched him in the face several times. Afshar jumped back, then removed a nightstick from a drawer of his desk. Afshar testified that defendant took the nightstick from him and beat him about the face, neck and shoulder. Afshar ran from the building and shouted for

help. Afshar testified that defendant chased him and was holding the nightstick in his hand. Afshar ran down a ramp leading into the building's parking garage, but the garage was shut. Afshar testified that defendant caught up with him and beat him with the nightstick, striking his face, neck, shoulders and body. Afshar was struck in the bridge area of his forehead, which began to bleed. At this point, Afshar indicated that he could not escape. Afshar fell down and went into "a locked position" with his hands on his head. Afshar testified that defendant kicked him in the ribs and head; Afshar lost consciousness.

On cross-examination, Afshar testified that he filed a civil suit against defendant arising out of this incident.

Irene Balsavias testified that she lived at 5701 North Sheridan Road. Balsavias testified that on the morning in question, she was sitting near the front door in the lobby of the building, waiting for a friend to arrive. A man ran into the lobby from the north tower. Balsavias identified this man as defendant. According to Balsavias, "[h]e was swearing and madder than heck." Defendant went directly to the desk and was yelling at Afshar, accusing him of ringing his doorbell. Afshar denied the accusation. Balsavias was seated such that she was facing the desk and could see defendant from the back. Defendant grabbed Afshar by the shirt and punched him in the face. Afshar pulled away and took the nightstick out of the desk drawer. Afshar ran out of the building; defendant chased him. Balsavias indicated that a few minutes later, defendant reentered the lobby with the nightstick in his hand. Balsavias testified that defendant put the nightstick back in the desk drawer and went back upstairs.

On cross-examination, Balsavias testified that she saw defendant take the nightstick from Afshar. Balsavias admitted that she did not see defendant hit Afshar with the nightstick in the lobby. Balsavias also testified that she did not see what happened outside the building.

Alonzo Coates testified that on the date in question, he was selling newspapers at the intersection of Sheridan and Hollywood when he saw defendant chasing Afshar out of the building. Coates testified that he did not see a nightstick in either of the men's hands. Coates saw defendant corner Afshar on the parking ramp. According to Coates, defendant hit Afshar in the chest, then hit him with a "combination," which Coates defined as "a left and a right." Afshar fell face first to the concrete pavement. Coates then watched defendant return to the building. Coates testified that he did not see defendant strike Afshar with a nightstick.

Coates testified that he rang the bell at the parking garage. A young woman emerged from the garage. After Coates informed her

of what had happened, the woman went to call an ambulance while Coates and his assistant stayed with Afshar to ensure that he stayed awake. Coates returned to selling newspapers after the ambulance arrived. The police also arrived on the scene, but Coates did not speak to them. Coates testified that defendant telephoned him approximately one month after the incident and spoke with him about the case three times before trial. Coates never spoke with members of the Chicago police department.

Defendant testified that on May 13, 1990, he was sleeping in his apartment when he was "buzzed" at approximately 1:30, 3:30 and 8:30 a.m. Defendant received no response when he answered these buzzers. After the third time, defendant showered and went down to the lobby. Defendant asked Afshar why Afshar was ringing his doorbell; Afshar denied having done so. Defendant testified that he called Afshar a "lying piece of shit and a fat motherfucker," but denied using racial epithets.

According to defendant, Afshar then pulled out the nightstick, raised it above his head and told defendant "Go to your room." Defendant told Afshar that he was going to call the police and have Afshar arrested for assault, whereupon Afshar struck him in the lower lip with the nightstick. Defendant testified that Afshar then came from behind the desk and continued to hit him with the nightstick. Defendant testified that he knocked the club out of Afshar's hand; the stick went flying across the lobby. Defendant then chased Afshar out of the building and down the parking ramp. Defendant indicated that Afshar hit him in the chest. Defendant then punched Afshar in the face with a combination that caused Afshar to fall forward to the ground.

Defendant testified that he returned to the lobby, picked up the nightstick and went back to his apartment. Defendant told his girl friend, Lisa Billings, to call the police. Defendant testified that he changed clothes and returned to the lobby, where the police had already arrived. Defendant stated that he gave the nightstick to one of the police officers, stating that Afshar had beat him with it.

Defendant estimated that Afshar was 5 feet 5 inches tall and weighed 220 pounds. Defendant testified that he was 6 feet tall, weighed 195 pounds and lifted weights three times a week.

After being processed at the police station, defendant went to Edgewater Hospital, where X rays were taken. Defendant testified that he was treated for severe pains and bruises; defendant introduced photographs of his injuries. He also testified that he was later given "heat treatments" for his lower back.

The parties stipulated that defendant was diagnosed with

multiple contusions at Edgewater Hospital and with a lacerated lip, contusions of the right hand and ankle and a sprain of the first sacroiliac. The parties also stipulated that Afshar was brought to Illinois Masonic Hospital and diagnosed with a cerebral concussion, multiple abrasions of the elbow and knee, and lacerations to the eyebrow area that later required sutures.

Lisa Billings corroborated defendant's testimony regarding the events that took place before and after the altercation between defendant and Afshar. Chicago police officer Robert Oznoff testified that pursuant to a radio call, he investigated the incident at issue here. Officer Oznoff took the nightstick from defendant and returned it to a janitor for the building. Officer Oznoff also interviewed an elderly lady and Coates' assistant at the scene. Officer Oznoff then arrested defendant. The parties stipulated that if called in rebuttal, Officer Oznoff would testify that he believed that defendant had been drinking on the morning in question.

Following closing arguments and jury instructions, defendant was found guilty of aggravated battery and sentenced to three years' imprisonment. Defendant now appeals.

I

Defendant contends that the State failed to prove him guilty beyond a reasonable doubt. The relevant inquiry on appeal is whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt, after viewing the evidence in the light most favorable to the prosecution. (*People v. Jimerson* (1989), 127 Ill. 2d 12, 43-44, 535 N.E.2d 889, 903.) It is axiomatic that determinations of the credibility of witnesses and the weight to be given to their testimony are the function of the trier of fact. This court will disturb a guilty verdict only when the evidence is so improbable or unsatisfactory that it raises a reasonable doubt as to defendant's guilt. See *People v. Jakes* (1990), 207 Ill. App. 3d 762, 770, 566 N.E.2d 422, 428; *People v. Brandon* (1990), 197 Ill. App. 3d 866, 874, 557 N.E.2d 1264, 1269.

In this case, defendant was charged with committing aggravated battery. (See Ill. Rev. Stat. 1989, ch. 38, pars. 12—4(a), (b)(1).) Thus, the jury was instructed that the State was required to prove that defendant intentionally, knowingly and without legal justification, caused Afshar: (a) great bodily harm; (b) permanent disfigurement; or (c) bodily harm by use of a deadly weapon.

■ Defendant attacks the credibility of the State's witnesses. Defendant notes that Afshar had a financial motive to testify falsely

because a criminal conviction would aid Afshar's civil suit against defendant. This subject is discussed in detail below; it suffices to note here that the jury was made aware of Afshar's civil suit during the State's examination of Afshar.

Defendant claims that Balsavias "admitted she never actually saw any of the events she testified to on direct." This claim does not seem to be supported by a complete reading of the record. The portion of the record at issue seems disjointed, with an objection, interjections by both the trial court and the State, and incomplete defense questions. A complete reading of the record shows that Balsavias testified that defendant hit Afshar in the face, took the nightstick from Afshar and chased Afshar out of the building.

Defendant claims that his testimony was corroborated by Coates and that no witness corroborated Afshar's testimony that defendant beat him with the nightstick. Nevertheless, the jury heard these witnesses and evaluated their credibility. As noted above, this court generally defers to such determinations.

Moreover, assuming *arguendo* that the inconsistencies identified by defendant undermine the theory that he committed aggravated battery with a deadly weapon, they do not undermine the theories that defendant caused great bodily harm or permanent disfigurement. Whether defendant has inflicted great bodily harm or permanent disfigurement is generally a question of fact. (See *People v. Figures* (1991), 216 Ill. App. 3d 398, 401, 576 N.E.2d 1089, 1092.) The term "great bodily harm" is not susceptible of precise legal definition. However, it requires a more serious or grave injury than "bodily harm," which includes, but is not limited to, temporary or permanent lacerations, bruises or abrasions. See *Figures*, 216 Ill. App. 3d at 401, 576 N.E.2d at 1092.

In this case, the record contains pictures of Afshar that demonstrate his injuries. The record also indicates that Afshar was permitted to show the jury the scar in the bridge area of his forehead. Defendant has failed to show that the evidence in this case, viewed in the light most favorable to the State, does not permit a rational jury to conclude that defendant intentionally caused Afshar to suffer permanent disfigurement.

## II

Defendant claims that the trial court denied him his right to confront the witnesses against him and his right to a fair trial by preventing him from cross-examining Afshar regarding his financial interest in a related civil suit. A defendant generally has the right to

cross-examine a witness about any interest, bias, or motive to testify falsely; such impeachment is an important function of the accused's right to confront witnesses. (See *People v. Turcios* (1992), 228 Ill. App. 3d 583, 599-600, 593 N.E.2d 907, 919.) Bias may be shown where the witness has a civil lawsuit pending against the defendant. (*Turcios*, 228 Ill. App. 3d at 601, 593 N.E.2d at 920.) Ultimately, however, the scope of cross-examination also falls within the discretion of the trial court and this court will not interfere absent an abuse of that discretion. *Turcios*, 228 Ill. App. 3d at 599, 593 N.E.2d at 919.

■ In this case, the trial court ruled that defendant could show that Afshar had a civil suit pending against defendant. Indeed, this fact was made known to the jury near the conclusion of the State's direct examination of Afshar. However, the trial court barred defendant from inquiring into the amount of damages sought in the suit. This court held that an identical limitation on cross-examination was within the discretion of the trial court in *People v. Jones* (1979), 70 Ill. App. 3d 338, 346, 387 N.E.2d 1010, 1015. The trial court's ruling in this case falls within the scope of *Jones*.

III

Defendant argues that he was denied a fair trial due to the State's comments during closing arguments. During opening and closing arguments, prosecutors have wide latitude to comment on evidence and draw reasonable inferences therefrom and, absent a clear abuse of discretion, a court's rulings on the scope of such comments will not be reversed on appeal. (See *People v. Rockman* (1986), 144 Ill. App. 3d 801, 813, 494 N.E.2d 688, 696.) Prosecutors may not argue facts not in evidence. (See *People v. Beier* (1963), 29 Ill. 2d 511, 516, 194 N.E.2d 280, 283.) Even so, such remarks do not warrant reversal unless they are so prejudicial that they constitute a material factor in the defendant's conviction. *People v. Townsend* (1985), 136 Ill. App. 3d 385, 394, 483 N.E.2d 340, 347.

■ Defendant claims that the prosecution improperly: (a) suggested that Coates was not credible because he was called by defendant; (b) referred to defendant as a "boxer" without evidence; (c) suggested that defendant was a racist; and (d) injected personal opinion into their argument. Initially, it should be noted that defendant failed to object at trial to all but one of the comments raised on appeal. The remaining objection was not renewed in defendant's post-trial motion. Thus, defendant's objections are deemed waived on appeal. (*People v. Caldwell* (1991), 218 Ill. App. 3d 1007, 1010, 579 N.E.2d 16, 18.) Nor has defendant shown that any of the allegedly ob-

jectionable comments were so prejudicial that they constituted a material factor in the defendant's conviction.

For all of the aforementioned reasons, we affirm the judgment of the circuit court of Cook County.

Affirmed.

MANNING, P.J., and O'CONNOR, J., concur.