THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WALTER O'NEAL, Defendant-Appellant.

First District (6th Division)   No. 1—92—1838

Opinion filed December 30, 1993.

Rita A. Fry, Public Defender, of Chicago (Todd Avery Shanker and Vicki Rogers, Assistant Public Defenders, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Karen O'Malley, and Jeanne A. Morrow, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE McNAMARA delivered the opinion of the court:

Defendant, Walter O'Neal, was charged with one count of heinous battery causing severe and permanent disfigurement (Ill. Rev. Stat. 1985, ch. 38, par. 12—4.1(a)) and two counts of aggravated battery of a child. The victim of the battery was defendant's stepson, Brandon Lee. After a bench trial, the trial judge found defendant guilty on all three counts. At the sentencing hearing, the judge noted that the convictions for aggravated battery merged into the conviction for heinous battery. He thereupon sentenced defendant to a term of 18 years for heinous battery.

On appeal, defendant contends that the State failed to prove him guilty of heinous battery beyond a reasonable doubt because it was not shown that the victim suffered permanent and severe disfigurement and because it was not shown that defendant had knowledge his actions would cause severe and permanent disfigurement. He argues, in the alternative, that if the conviction for heinous battery is affirmed, his sentence is excessive and should be reduced.

The pertinent facts are as follows. Dana O'Neal, defendant's wife and the victim's mother, testified that on May 11, 1990, she went to work leaving her sons at home with defendant. At about noon, she received a telephone call that her son Brandon had nearly drowned in the bathtub. When she arrived at the hospital she learned that Brandon had sustained burns from just below his knees down to his feet.

Mrs. O'Neal further testified that Brandon remained in the hospital for three weeks. At the time of trial, 18 months after the injury, there were still marks on Brandon's legs. She stated that these marks or discolorations were very mild. While the boy is able to walk and run, he tires easily, is sensitive to hot and cold, and must wear long socks. After Brandon came home from the hospital, he had to return for physical therapy for several months. Brandon would also need home therapy treatment for at least another six months. Brandon did not have skin grafts or plastic surgery.

After O'Neal completed her testimony, Brandon was brought into court where the trial judge was able to observe scars on his legs. Mrs. O'Neal pointed out the scars on Brandon's legs, which appeared to be portions of discolored skin. The judge stated that there was a darker fleshtone in the areas where the burns occurred.

Doctor Raphael Lee testified for the State that he was director of the burn unit of the University of Chicago. He examined Brandon on May 13, 1990, after the boy was transferred to Wyler Children's Hospital at the university. Brandon had scratches and bruises on his

face as well as older and more permanent scars throughout the torso and upper extremities. He also had an emergent scald burn, characteristic of a body part having been placed in hot water. Through photographs, Dr. Lee identified blistering and burn wounds on both legs. He classified Brandon's injury as a partial thickness scald burn or second degree burn. The partial thickness, although present, was healed in about 10 days. The majority of the skin surface remained intact, but the "mechanical integrity" of the skin below its surface was "permanently altered." Dr. Lee could not say with certainty how long the scar tissue would remain. The sensitivity of the skin, however, would most likely subside within one year. Dr. Lee offered the opinion that it was significant that the bottom of Brandon's feet were not burned. It indicated that the boy was trying to hold on to whoever was immersing him in the water. This action causes the child to push his feet against the bottom of the tub, which protects the plantar surface of the feet from the heat.

Doctor Lee testified that thermal burns could occur in water ranging from 104 degrees to 170 degrees Fahrenheit. From 130 degrees on up, vapor rises from the water. Doctor Lee could not determine the temperature of the water in this case without knowing how long Brandon was immersed.

Assistant State's Attorney Laura Morask testified for the State that on June 11, 1990, she interviewed defendant. She prepared a handwritten summary of his statement which defendant read and then signed, after making some corrections.

The statement contained the following material. On May 11, 1990, defendant was left to care for two of his wife's children. He and his wife would always beat the children with a belt when they were bad. After using the belt, defendant would place the child in a hot bath and leave the water running so as to hide welt marks and bruises. Defendant would then apply cocoa butter to the child's skin.

On the day in question, Brandon's second birthday, Brandon and his brother got into a fight over a birthday present Brandon had received. Defendant took Brandon and whipped him with a belt. Defendant was already angry because Brandon had urinated in his bed during the previous night.

After whipping Brandon, defendant placed him in the tub and turned on the water. The water was hot, and defendant knew it would get hotter because the heating mechanism was broken. Defendant left Brandon standing in the tub with the water running while he went to the door to talk to friends. About six or seven minutes later, defendant heard a thud. He returned to the bathroom where Brandon was lying unconscious in the water. The boy was bleeding from the

mouth, and was totally limp. Brandon's eyes were rolled up, and two fingers of each hand had turned grey. He also vomited some water.

Defendant took Brandon to a local clinic, where he received ointment and antibiotics and was sent home. On the way home, defendant met a clergyman and obeyed his instructions to take the boy to a hospital. At the hospital, defendant told hospital personnel that he had been eating when he told Brandon to get in the tub. When asked why there were so many marks on the boy's body, defendant lied and said that Brandon bruised easily.

After the State concluded its case in chief, the trial court denied defendant's motion for a discharge. Defendant then rested without presenting any evidence. The trial court found defendant guilty of all charges, and on January 10, 1992, conducted a hearing in aggravation and mitigation.

In mitigation, it was shown that defendant had no prior convictions. Defendant presented the testimony of a chaplain and a counselor who had worked with defendant while he was in jail awaiting trial. The chaplain stated that he noticed a profound change for the better in defendant, and stated that defendant was no longer addicted to drugs.

Alan Culver of the Gateway Foundation testified that defendant had successfully completed an intensive drug rehabilitation program while in jail and was no longer addicted. According to Culver, defendant was now a role model and one of the pacesetters for the entire jail. Culver would provide counseling for defendant and his family. The court also received letters of support from other members of the community.

The sentencing hearing was concluded on February 10, 1992. At that time, the judge was advised that defendant had completed his GED requirement while in jail. Defendant informed the judge that he was sorry for the pain he had caused his son and that he had changed profoundly for the better during his 20 months in jail.

The trial judge cited the matters that he had heard in mitigation and found them commendable. However, the judge went on to say that the crime was so atrocious that it was difficult for him to relate the facts. The trial judge thereupon sentenced defendant to a term of 18 years for heinous battery.

The trial judge was transferred from the criminal division, and on May 4, 1992, Judge Mary Jane Theis denied defendant's motion to reconsider the sentence.

The State charged defendant with causing severe and permanent disfigurement to two-year-old Brandon in violation of the heinous battery statute. On appeal, defendant contends the State failed to

prove that Brandon had suffered severe and permanent disfigurement. Heinous battery is a Class X felony.

The statute states as follows:

"§ 12—4.1. Heinous Battery. (a) A person who, in committing a battery, knowingly causes severe and permanent disability or disfigurement by means of a caustic substance commits heinous battery." Ill. Rev. Stat. 1991, ch. 38, par. 12—4.1(a).

Defendant's cruel and wanton conduct caused serious injury to two-year-old Brandon. Both of his legs received second degree burns. Brandon was in the hospital for three weeks and required out-patient and home physical therapy. He tires easily and remains sensitive to temperature changes. He also has scar tissue on both legs.

However, we find that the State failed to prove that this injury constituted severe and permanent disfigurement as required by the charges brought against defendant.

Doctor Lee testified that the outer wounds to Brandon's legs healed within 10 days. He stated that the mechanical integrity below the surface of the skin was permanently altered, causing skin sensitivity. However, he went on to state that the sensitivity would most likely subside within one year. The doctor was unsure as to how long the scar tissue would remain.

Brandon's mother testified that his wound had all but healed and that very little marking remained. She stated that there was still a mild discoloration of the skin on his legs, below the knees. Her testimony went unchallenged and unrebutted. The trial judge, who observed Brandon's legs, stated only that there was a darker flesh-tone in the areas where the burns occurred.

Thus, the State offered no evidence of severe and permanent disfigurement to Brandon. The only mention of permanency by Doctor Lee was in reference to damage below the skin's surface and could not refer to disfigurement.

Very few cases have interpreted the heinous battery statute. In those cases where defendants were found guilty of that crime, the State presented evidence that the victims had sustained severe and permanent disfigurement. In *People v. Hicks* (1984), 101 Ill. 2d 366, 462 N.E.2d 473, the defendant poured boiling water over the victim, destroying her breast buds. As a result, the victim required substantial debridement and skin grafting, and the State offered medical evidence which established that the victim would suffer permanent disfigurement. In *People v. Rogers* (1991), 222 Ill. App. 3d 774, 584 N.E.2d 397, after pouring grain alcohol over the victim, the defendant set the victim on fire, severely burning her face, chest, breast, thighs, abdomen and hands. The victim required skin grafting.

Again, the State presented evidence that the victim was permanently disfigured. No such evidence was offered by the State in the present case.

Consequently, we must reverse the conviction for heinous battery and set aside the term of 18 years.

However, the State did present overwhelming evidence that defendant was guilty of aggravated battery of a child (Ill. Rev. Stat. 1991, ch. 38, par. 12—4.3(a)), a Class 1 felony, and the trial court properly found him guilty of that crime. The penalty for that crime may be imprisonment from 5 to 30 years. Ill. Rev. Stat. 1991, ch. 38, par. 12—4.3(a).

On the day in question, defendant, using a belt, beat the two-year-old child over most of his body for a period of two minutes, striking the boy 15 to 20 times. Defendant had done the same thing on many previous occasions. He then placed the boy in a tub of hot water in order to conceal the welts and bruises on the child. Defendant knew that the water was hot and that it would get hotter because the heating mechanism was broken. Notwithstanding that knowledge, defendant left the room to talk to friends at the front door. Defendant returned only when he heard a thud in the bathroom. He found Brandon lying unconscious in the water, totally limp and bleeding from the mouth. Moreover, Doctor Lee offered the opinion that the fact that the bottoms of Brandon's feet were not burned indicated that he was trying to hold on to whoever immersed him in the water. Defendant was properly convicted of aggravated battery of a child.

We need only determine what sentence would be appropriate in the matter.

Defendant's conduct was so cruel, wanton and atrocious that it is almost incomprehensible. We recognize that defendant had no previous criminal record, and like the trial judge, we find that defendant's conduct as a model prisoner while awaiting trial is commendable. Nevertheless, we believe that his brutal crime must be punished and punished sternly. In fixing an appropriate sentence, the court must consider the nature of the crime and proper punishment, as well as defendant's rehabilitative prospects. (*People v. Whitehead* (1988), 171 Ill. App. 3d 900, 525 N.E.2d 1084.) Defendant's rehabilitative potential is not necessarily accorded a greater import than the seriousness of the offense. (*People v. Waud* (1977), 69 Ill. 2d 588, 373 N.E.2d 1.) Accordingly, we impose a sentence of 15 years for the offense of aggravated battery of a child.

For the reasons stated, the judgment of conviction of the circuit court of Cook County for heinous battery is reversed and the sentence

for that crime is vacated; the judgment of conviction for aggravated battery of a child is affirmed, and defendant is sentenced to a term of 15 years for that offense.

Affirmed in part; reversed in part.

EGAN and GIANNIS, JJ., concur.