2021 IL App (1st) 173107-U
No. 1-17-3107
Order filed January 26, 2021

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 17 CR 07527 |
| | ) | |
| TASHAUN JOHNSON, | ) | Honorable Darron Edward |
| | ) | Bowden, |
| Defendant-Appellant. | ) | Judge presiding. |

_____

JUSTICE PUCINSKI delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Cobbs concurred in the judgment.

**ORDER**

¶ 1     *Held*:  Defendant's convictions for aggravated domestic battery and domestic battery are affirmed over his challenge to the sufficiency of the evidence of permanent disfigurement and his contention the trial court erroneously admitted injury photographs of the victim of a prior domestic battery he committed.

¶ 2     Following a jury trial, defendant Tashaun Johnson was found guilty of one count of aggravated domestic battery premised on permanent disfigurement and one count of domestic battery, and was sentenced to concurrent terms of three years' and two years' imprisonment respectively. On appeal, defendant contends the State failed to prove him guilty of aggravated

domestic battery where the evidence did not establish he caused permanent disfigurement to the victim. He also argues the trial court abused its discretion by allowing injury photographs of a prior victim of a domestic battery to which defendant pled guilty to be admitted and published to the jury as other crimes evidence. We affirm.

¶ 3    Charged with 11 counts of aggravated domestic battery, domestic battery, and unlawful restraint, defendant went to trial on three counts arising out of an incident with Makeyta McGee, the mother of his child, on May 6, 2017.[1] One count of aggravated domestic battery (720 ILCS 5/12-3.3(a-5) (West 2016)) alleged he, in committing a domestic battery, strangled McGee. Another count of aggravated domestic battery (720 ILCS 5/12-3.3(a) (West 2016)) alleged he intentionally or knowingly caused permanent disfigurement to McGee by punching her in the face. One count of domestic battery (720 ILCS 5/12-3.2(a) (West 2016)) alleged he intentionally or knowingly, and without legal justification, caused bodily harm to McGee by striking her about the head and body, causing injury. As defendant only challenges the sufficiency of the evidence of permanent disfigurement and the admission of certain photographs, we recite only those facts necessary to decide this case.

¶ 4    The State filed a pretrial motion to admit proof of defendant's prior convictions for two counts of aggravated domestic battery in two separate cases. These convictions arose out of one incident in February 2014, in which defendant grabbed his then-girlfriend, Talmah O'Hara, around the throat with both hands, and another incident in March 2014, in which defendant punched O'Hara in the face and fractured her orbital bone. Defendant pled guilty to one count of aggravated

---

[1] The State *nol-prossed* the eight other counts.

domestic battery in each case. The State sought to admit evidence of the other crimes to prove defendant's propensity to commit domestic battery.

¶ 5    At a hearing on this motion, defendant argued that evidence of his prior aggravated domestic battery convictions should be excluded as more prejudicial than probative. The court granted the State's motion, finding that "the time difference, the nature of the crime, similarities in crime" made the evidence of defendant's prior convictions more probative than prejudicial with respect to defendant's "propensity to admit these types of crimes." There was no discussion of photographs at the hearing on this motion.

¶ 6    At trial, Makeyta McGee testified defendant, whom she identified in court, was the father of her two young children. She and defendant were in an "off and on" relationship for approximately two years. On May 5, 2017, McGee spoke to defendant by telephone and said she had decided to break up with him.

¶ 7    At approximately 1:00 a.m. on May 6, 2017, McGee was asleep in her apartment when defendant woke her up by knocking on the front door and windows. She opened the door and let defendant into her apartment. Defendant "pleaded" for her to activate her Link card, which he had, because he had no money for gas. Defendant began driving McGee and their child to McGee's mother's house to ask for money, but instead drove to his family's house.

¶ 8    At defendant's family's house, defendant and McGee had a "hostile" discussion inside the car, and defendant punched McGee in her top lip with a closed fist, which caused a cut and bleeding. McGee acknowledged she told an assistant State's Attorney and the grand jury defendant also slapped her with an open hand before he punched her, which "hurt really badly."

¶ 9    McGee got out of the car and ran away, but ran back toward defendant when she saw him taking their child toward his family's house. She followed him into the house and defendant punched her in the stomach with a closed fist. Defendant also kicked McGee, and "tried to choke" McGee by wrapping both of his hands around her neck. She felt pressure on her throat and was unable to breathe. Defendant released McGee's neck when his family pulled him back.

¶ 10    McGee and defendant went upstairs to his sister's room, where defendant fell asleep. Defendant awoke at approximately 10:00 a.m. the following day. McGee testified she did not remember whether defendant struck her with an open hand, but acknowledged she previously told an assistant State's Attorney and the grand jury defendant "smacked" or "slapped" her "like, twice."

¶ 11    Defendant drove McGee back to her apartment. Her mouth "hurt," and there was swelling on her face, but the cuts on her lip had stopped bleeding. Defendant stayed at McGee's apartment that day and left the following morning. After defendant left, McGee telephoned her mother, and shortly thereafter, Riverdale police arrived at McGee's apartment. McGee went to the Riverdale police station, where she spoke to a police officer and an assistant State's Attorney. She did not to go to the hospital, but received treatment for the injury to her mouth from Riverdale paramedics at the fire station next door. McGee had a scar above her lip at the time of trial, which "happen[ed] after [she was] punched in the face."

¶ 12    McGee testified four photographs accurately depicted her face as it appeared on May 7, 2017. The State moved these photographs into evidence. They depict a cut above the middle of McGee's upper lip, and a second cut in the middle of the underside of McGee's upper lip.

¶ 13    Latriese Wilson testified she is McGee's sister. In May 2017, defendant, whom Wilson identified in court, and McGee were dating and lived together.

¶ 14    On the afternoon of May 7, 2017, Wilson and her mother went to McGee's apartment because "[s]he didn't sound right" during a telephone call that day. Wilson called Riverdale police and directed them to McGee's address. When Wilson and her mother arrived at McGee's apartment building, police were outside McGee's door. Wilson convinced McGee to open the door. Wilson saw McGee was "beat up. Her mouth was swollen and with dry blood. And her shirt was all stretched [out], and she was scared for us to be there." She was afraid to come out of the apartment and in pain. McGee said defendant caused her injuries.

¶ 15    Wilson testified the four photographs of McGee accurately depicted how she appeared on May 7, 2017, and that McGee did not have those injuries "a couple days before May 7, 2017."

¶ 16    Talmah O'Hara testified she dated defendant, whom she identified in court, in 2014. On February 28, 2014, defendant came to O'Hara's home and started an argument with her. Defendant put his hands around O'Hara's neck and squeezed, such that O'Hara had difficulty breathing. Defendant did this approximately three times as O'Hara tried to push him off her. O'Hara's friend called police, who arrived 10 to 15 minutes later, but O'Hara told them to leave because she and defendant were just arguing.

¶ 17    On March 20, 2014, O'Hara and defendant had another argument as they were walking down the street. Defendant "got in [O'Hara's] face," and she struck him with an open hand because she was scared. Defendant tried to hit O'Hara with his jacket while a friend tried to break them up. Defendant and O'Hara spat in each other's faces, and O'Hara continued hitting defendant. Defendant punched O'Hara in her left eye with a  closed fist, breaking her orbital bone. O'Hara

fell to the ground; her nose was bleeding and she was "seeing stars." A nearby security guard called police, and an ambulance transported O'Hara to the hospital, where she received treatment for her fractured orbital bone. She later underwent surgery.

¶ 18    In three photographs, O'Hara identified herself as she appeared the day after the March 20, 2014, incident. The photographs depicted how "both of [her] eyes were black and blue from the incident." Defendant did not object to this testimony. These photographs depict bruises under both of O'Hara's eyes. The State sought to admit the photographs of O'Hara's injuries, and defendant did not object.[2]

¶ 19    The court admitted certified copies of defendant's convictions for two counts of aggravated domestic battery in the cases involving O'Hara.

¶ 20    Defendant moved for a directed verdict. As to the aggravated domestic battery count premised on permanent disfigurement, defendant argued there was no evidence of permanent disfigurement. The court denied defendant's motion.

¶ 21    Defendant testified he had pled guilty in a previous aggravated domestic battery case. On May 5, 2017, he went to McGee's apartment and knocked on her door and window. She let him into the apartment, and they talked about their Link card. They decided to drive to defendant's mother's house to get money for gas.

¶ 22    When defendant and McGee arrived at defendant's mother's house, they had an argument in the car. His mother took their child, and defendant returned to the car, where he told McGee his

---

[2] The trial court did not explicitly rule on the admission of the three photographs of O'Hara's injuries, and there is no indication whether they were published to the jury during trial. However, the photographs are included in the record on appeal, and the parties do not dispute they were admitted into evidence and were provided to the jury during deliberations.

ex-girlfriend was pregnant. McGee slapped defendant and pulled his dreadlocks, and defendant's "elbow hit her on the top of the lip" as he pulled back. Defendant and McGee went into the house, and defendant told McGee her lip was bleeding. McGee continued to attack defendant inside the house. Defendant denied he choked McGee. Defendant and McGee went to a room upstairs and fell asleep. The following morning, they drove back to McGee's apartment.

¶ 23    On cross-examination, defendant testified McGee's lip was accidentally injured when "she was coming forward, and [he] was coming towards her. It was like clash in between of her elbow and [his] lip." McGee did not care about her lip injury; she was "more focused on the situation." Defendant could see blood on McGee's lip, but it was not "dripping down." Defendant had no other physical contact with McGee's face.

¶ 24    Upon viewing the photographs of McGee's injuries, defendant testified she "wasn't that swol[l]e[n]" on May 7, 2017.

¶ 25    Marilyn Johnson testified defendant is her son. On May 5, 2017, Marilyn saw defendant and McGee arguing in a car in front of her home.[3] She did not see defendant hit McGee inside the car. Defendant and McGee went inside Marilyn's house, and she was in the same room as them. She did not see defendant hit, push, strangle, or kick McGee inside her home. Marilyn saw McGee "fighting" defendant by running into him with her chest and making a circular motion with her arms. Defendant and McGee went upstairs to sleep, woke up, and went home. Marilyn never saw defendant hit McGee; McGee "was the only one fighting."

---

[3] Marilyn Johnson shares the same last name with another witness, Miosha Johnson, so we refer to them by their first names for clarity.

¶ 26    On cross-examination, Marilyn testified McGee said her lip was injured and asked for ice when she came into the house. McGee "said she was trying to hit [defendant] and he blocked and his elbow hit her in the mouth." Marilyn saw McGee "hitting [defendant] real hard" and "steady fighting him." Defendant did not "make any actions back at her;" he "got tired and went and sat on the steps."

¶ 27    Miosha Johnson testified defendant is her uncle. Miosha was sleeping on the night of May 5, 2017, when she heard McGee yelling. She went downstairs and saw McGee sitting on the couch, and defendant standing. Miosha did not see defendant hit, punch, push, or strangle McGee. She saw McGee charge at and hit defendant; defendant held his cigarette up with his right hand and put his left arm over his face. Defendant sat on the stairs and began crying, went outside, and then came back inside.

¶ 28    On cross-examination, Miosha testified McGee's "lip was busted" when Miosha saw her on the couch. She saw McGee "swinging at [defendant] with both hands," and saw her hands make contact with his arm.

¶ 29    In closing, the State argued McGee's scar was "enough to establish permanent disfigurement." The State also told the jury they would "get an opportunity to see *** pictures of [O'Hara's] face, the swollen bruises under her eyes." In response, defendant argued the jury was not "here for what happened with Talmah O'Hara." With respect to McGee's scar and alleged permanent disfigurement, defendant told the jury, "[Y]ou were sitting in front of her. If you saw something, you know, you have to decide what you have to decide, but you know, permanent disfigurement is something you can see."

¶ 30   The court instructed the jury that the other crimes evidence introduced by the State "may be considered for its bearing on any matter to which it is relevant, including, but not limited to, intent, motive, state of mind and propensity. It is for you to determine whether [defendant] was involved in those offenses and, if so, what weight should be given to this evidence."

¶ 31   After the jury was excused to deliberate, defendant objected to the photographs of O'Hara being provided to the jury because they were "more prejudicial than probative." The court overruled defendant's objection.

¶ 32   The jury found defendant guilty of aggravated domestic battery premised on permanent disfigurement and domestic battery. The jury acquitted defendant of aggravated domestic battery premised on strangulation.

¶ 33   Defendant filed a motion for new trial, arguing in relevant part "[t]he jury's finding of guilty on the charge relating to permanent disfigurement was not supported by the evidence" and "[t]he Court erred in allowing pictures of the other crimes victims [*sic*] to be sent back to the jury over defendant's objection." The court denied defendant's motion.

¶ 34   The court sentenced defendant to three years' imprisonment on the count of aggravated domestic battery premised on permanent disfigurement, and two years' imprisonment on the count of domestic battery, to run concurrently.

¶ 35   On appeal, defendant first challenges his conviction for aggravated domestic battery premised on permanent disfigurement. Specifically, he argues the evidence did not establish he caused permanent disfigurement to McGee and, therefore, his conviction should be reduced to domestic battery and remanded for resentencing.

¶ 36     When a defendant challenges the sufficiency of the evidence, we review whether, viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. *People v. Pizarro*, 2020 IL App (1st) 170651, ¶ 29. We do not retry the defendant. *People v. Sutherland*, 223 Ill. 2d 187, 242 (2006). Rather, we "carefully examine the evidence while bearing in mind that the trier of fact is in the best position to judge the credibility of witnesses, and due consideration must be given to the fact that the fact finder saw and heard the witnesses." *People v. Herman*, 407 Ill. App. 3d 688, 704 (2011). We will only reverse a conviction if the evidence is so improbable, unreasonable, or unsatisfactory as to justify a reasonable doubt of the defendant's guilt. *People v. Rowell*, 229 Ill. 2d 82, 98 (2008).

¶ 37     To prove defendant guilty of aggravated domestic battery as charged, the State had to establish beyond a reasonable doubt that he, in committing a domestic battery, knowingly caused permanent disfigurement to McGee. See 720 ILCS 5/12-3.3(a) (West 2016) Defendant does not dispute he committed a domestic battery against McGee; he only challenges the evidence of permanent disfigurement. Disfigurement is that which " 'impairs or injures the beauty, symmetry, or appearance of a person or thing; that renders unsightly, misshapen, or imperfect, or deforms in some manner.' " *People v. Reed*, 2018 IL App (1st) 160609, ¶ 44 (quoting *People v. Woods*, 173 Ill. App. 3d 244, 249 (1988)). Whether a defendant caused permanent disfigurement is a question for the trier of fact. *Id.*

¶ 38     The evidence sufficiently supported the jury's finding that defendant caused permanent disfigurement to McGee. McGee testified defendant punched her in the mouth with a closed fist, which caused a cut to her upper lip. This injury was depicted in photographs, which the jury was able to view. McGee also testified she had a scar on her upper lip, which she attributed to defendant

punching her in the mouth. The jury was able to observe her scar in person at trial. Given the jury's firsthand observations of McGee, we defer to its finding of fact that she was permanently disfigured, and that defendant caused such permanent disfigurement. See *People v. Jackson*, 232 Ill. 2d 246, 280-81 (2009) (it is for the trier of fact to resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences therefrom).

¶ 39     Our conclusion is consistent with prior decisions holding that even a small scar can constitute permanent disfigurement. See, e.g., *People v. Doran*, 256 Ill. App. 3d 131, 136 (1993) (evidence of permanent disfigurement sufficient where victim displayed scar on his forehead to jury); *People v. Newton*, 7 Ill. App. 3d 445, 447 (1972) (evidence of permanent disfigurement sufficient where victim indicated he had a small scar underneath his hair at time of trial). Thus, the evidence was sufficient to support defendant's conviction for aggravated battery premised on permanent disfigurement.

¶ 40     Defendant argues "there was no evidence that [McGee's] scar was permanent and would not fade." In support of this argument, he cites *People v. O'Neal*, 257 Ill. App. 3d 490 (1993). However, as defendant concedes in his reply, that case is distinguishable because, unlike here, the permanent damage to the victim's body was below the skin and not visible. *O'Neal*, 257 Ill. App. 3d at 491-92. Further, we cannot consider defendant's reference to a medical website for the proposition that scars "usually fade over time," because that material was not introduced at trial and is not included in the record on appeal. See *People v. Magee*, 374 Ill. App. 3d 1024, 1030 (2007); *People v. Mehlberg*, 249 Ill. App. 3d 499, 532 (1993). Defendant's speculation that McGee's scar might someday fade is not a basis for reversing his conviction. Accordingly, we

affirm defendant's conviction for aggravated domestic battery premised on permanent disfigurement.

¶ 41     Defendant also challenges the trial court's decision to admit three photographs of the injuries O'Hara sustained in the March 2014 incident of domestic battery, to which defendant pled guilty.

¶ 42     We note that defendant did not object to O'Hara's testimony about the photographs at issue, nor did he timely object to the admission of those photographs. A party's failure to object to evidence at trial forfeits the issue on appeal. *People v. Hudson*, 228 Ill. 2d 181, 190 (2008). However, the State does not argue defendant forfeited this issue by failing to object at trial, so the State has forfeited any forfeiture argument. *People v. Bridgeforth*, 2017 IL App (1st) 143637, ¶ 46.

¶ 43     Generally, evidence of other crimes is not admissible to show the defendant's character or propensity to commit crime. Ill. R. Evid. 404(b) (eff. Jan. 1, 2011). However, section 115-7.4 of the Code of Criminal Procedure of 1963 (725 ILCS 5/115-7.4 (West 2016)) provides an exception for cases in which a defendant is charged with domestic violence. *People v. Dabbs*, 239 Ill. 2d 277, 291 (2010). Section 115-7.4(a) provides that "evidence of the defendant's commission of another offense or offenses of domestic violence is admissible, and may be considered for its bearing on any matter which is relevant" (725 ILCS 5/115-7.4(a) (West 2016)), including propensity to commit a crime of domestic violence. *People v. Kelley*, 2019 IL App (4th) 160598, ¶ 77. However, other-crimes evidence will not be admitted if its prejudicial effect substantially outweighs its probative value. *Dabbs*, 239 Ill. 2d at 283. Here, defendant does not challenge the admission of his 2014 aggravated domestic battery convictions or O'Hara's testimony regarding

that other crimes evidence; he only challenges the admission of injury photographs related to one of those incidents.

¶ 44 When admitting other crimes evidence pursuant to section 115-7.4, the trial court "must admit only so much evidence as is reasonably necessary to establish propensity." *People v. Smith*, 406 Ill. App. 3d 747, 756 (2010). Where photographic evidence is relevant to establish any fact at issue, such as defendant's propensity to commit domestic battery at issue here, it is admissible, even if the images are grueseome or disgusting in nature. See *People v. Degorski*, 2013 IL App (1st) 100580, ¶ 97. An exception exists only where the nature of the photographs is so prejudicial and so likely to inflame the jurors' passions that it outweighs the probative value of the evidence they depict. *People v. Viramontes*, 2014 IL App (1st) 130075, ¶ 80 (abrogated on other grounds by *People v. McDonald*, 2016 IL 118882). Although photos may be cumulative of witness testimony, they may nonetheless aid jurors in understanding the testimony. *People v. Himber*, 2020 IL App (1st) 162182, ¶ 44.

¶ 45 The trial court has the sound discretion to weigh the probative value and potentially prejudicial effect of photographs, and its decision as to which evidence should be taken into the jury room will not be disturbed absent a clear showing of an abuse of discretion. *People v. Taylor*, 2011 IL 110067, ¶ 27. "[A]n abuse of discretion occurs when the trial court's ruling is fanciful, unreasonable or when no reasonable person would adopt the trial court's view." *Id.*

¶ 46 The trial court did not abuse its discretion in allowing the jury to view photographs of O'Hara's injuries. The photographs, coupled with O'Hara's testimony, established that, because defendant committed a domestic battery that caused visible injuries to O'Hara's face, it was more likely he committed a domestic battery that caused visible injuries to McGee's face, as charged.

Such propensity evidence is proper under section 115-7.4. See 725 ILCS 5/115-7.4(a) (West 2016). The other crimes evidence also served to rebut defendant's claim he was innocent and McGee was injured when she attacked him. See *People v. Hale*, 326 Ill. App. 3d 455, 465 (2001). Further, although the photographs are unpleasant, they are not particularly gruesome or disgusting, and there are only three of them. The photographs depict bruising under both of O'Hara's eyes. They do not depict any blood or open wounds. There is no basis for us to conclude the trial court abused its discretion on this issue.

¶ 47    Defendant argues the court should not have admitted these photographs because they were "unnecessary and greatly prejudicial" to him. We disagree that the photgraphs were "unnecessary." As noted above, although photos may be cumulative of witness testimony, they may nonetheless aid jurors in understanding the testimony. *Himber*, 2020 IL App (1st) 162182, ¶ 44. We also disagree that the photographs were unfairly prejudicial. This was not a case in which the State "piled on" evidence of defendant's other crimes, as defendant claims. The State only introduced three photographs of O'Hara's injuries, and only asked her four questions about them. Furthermore, nothing in the record indicates the jury found defendant guilty "because of the injuries they saw in an unrelated case," as defendant claims. On the contrary, the fact that the jury acquitted defendant of one count, but found him guilty on others, suggests the jury paid close attention to the facts and the instructions, and made a carefully considered decision.

¶ 48    Defendant also contends the trial court erroneously failed to provide a limiting instruction at the time of O'Hara's testimony about the photographs. See Illinois Pattern Jury Instructions, Criminal No. 3.14 (approved October 17, 2014) (hereinafter IPI 3.14). However, the committee note to IPI 3.14 merely *"recommends"* that a limiting instruction be given when other crimes

evidence is first presented to the jury; it does not *require* a contemporaneous limiting instruction. (Emphasis added.) IPI Criminal No. 3.14 committee comments. Moreover, "[i]t is the burden of the party wanting a specific instruction to present it to the court and request that it be given to the jury." *People v. Anderson*, 266 Ill. App. 3d 947, 954 (1994) (abrogated on other grounds by *People v. Washington*, 2012 IL 110283). Defendant did not request a limiting instruction at the time of O'Hara's testimony about the photographs of her injuries, so the fact that the trial court did not provide a limiting instruction at that time is not a basis for reversing defendant's convictions. That is especially true given that defendant did not object to O'Hara's testimony about the photographs, and given that the trial court gave a limiting instruction before the jury saw the photographs during deliberations.

¶ 49   The cases defendant cites on this issue are not factually similar to this case and do not warrant reversal of his convictions. See, e.g., *People v. Thigpen*, 306 Ill. App. 3d 29, 38 (1999) (photographs of victims' corpses in a murder trial); *People v. Nunley*, 271 Ill. App. 3d 427, 432 (1995) (no photographs); *People v. Kannapes*, 208 Ill. App. 3d 400, 404 (1990) (photograph of defendant wearing T-shirt that said "Enjoy Cocaine" in a drug case). Accordingly, we find no error in the admission of the photographs.

¶ 50   For the foregoing reasons, we affirm defendant's convictions.

¶ 51   Affirmed.