2024 IL App (1st) 240594

No. 1-24-0594B

Order filed June 24, 2024.

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 2024 MC 1101383 |
| | ) | |
| KENNAN JACKSON, | ) | The Honorable |
| | ) | Charles Beach, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE LAVIN delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Pucinski concurred in the judgment.

ORDER

¶ 1    *Held*: The trial court did not abuse its discretion in denying defendant pretrial release, given the facts proffered.

¶ 2    Defendant Kennan Jackson appeals from the trial court's order denying him pretrial release under the Pretrial Fairness Act (Act) (see Pub. Act 101-652 (eff. Jan. 1, 2023)), which amended the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/100-1 *et seq.* (West

2024)).[1] He contends that the State failed to prove the proof was evident or the presumption great that he committed the charged offense and that, given his background, the trial court erred in concluding he had to remain in jail pending trial. We affirm.

¶ 3                                    BACKGROUND

¶ 4       Briefly stated, defendant, age 19, was arrested on March 3, 2024, and subsequently charged with aggravated battery, great bodily harm (see 720 ILCS 5/12-3.05(a)(1), (h) (West 2024)), stemming from an incident wherein defendant beat the victim, a 24-year-old woman, breaking her nose. The State filed a petition for pretrial detention. A timely pretrial detention hearing followed, and the record shows the State proffered the following evidence as to the forcible felony. See 725 ILCS 5/110-6.1(a)(1.5) (West 2024).

¶ 5       On the aforementioned date, around 8:45 p.m., police officers were dispatched and arrived to observe a battery in progress on a south-side street. The police queried about what was taking place. In response, defendant jumped up and down with closed fists and stated that he was "beating her ass," in reference to the victim, and officers then placed him in custody. Defendant had blood on his hand. The victim's face had "major bruising and swelling." In addition, the victim was not wearing pants and had ripped underwear. Defendant's pants were down, as well. While in the police squad car, defendant "made an excited utterance" that the victim took his money to "get dope," and that's why he was "beating her ass."[2] Defendant denied several times

---

[1] We note that the Illinois Compiled Statutes and the forgoing public act do not refer to the "Safety, Accountability, Fairness and Equity-Today" Act, *i.e.*, SAFE-T Act, or the "Pretrial Fairness Act." See *Rowe v. Raoul*, 2023 IL 129248, ¶ 4 n.1. Instead, certain provisions of the legislation in question were amended by Public Act 102-1104 (eff. Jan. 1, 2023). See *Rowe*, 2023 IL 129248, ¶ 4. Additionally, the supreme court initially stayed the implementation of this legislation but later vacated the stay effective September 18, 2023. *Id.* ¶ 52.

[2] The transcript says, "While in the squad car, defendant made an excited utterance that defendant took his money to get dope, and he was beating her ass as a result." We note the second "defendant" in this sentence appears to be a typo.

that he was trying to rape the victim. Instead, he stated "he was trying to kill her." According to the State's proffer and arrest report, defendant further stated that when he got out of jail, he would "find that bitch and kill her."

¶ 6    Following *Miranda* warnings, defendant added that the victim stole $100 from him, and he again stated that he beat her in retaliation. Defendant stated that he saw the victim walking down the street and so he "walked up behind her." He repeated that he did not rape the victim but was instead trying to kill her. He added that the "victim is lucky that he did not kill her."

¶ 7    The victim was transported to the hospital and diagnosed with a "fractured nasal bone." The court noted the arrest report indicated the victim was taken to the hospital "in critical condition by AMD 50."

¶ 8    The defense proffered, however, that the victim was released from the hospital and "was ambulatory and in such a condition that she could make statements," thus contradicting that she was in critical condition. The defense added that the police report documented the victim suffered a bruised face and neck.

¶ 9    The State argued the proof was evident and the presumption great that defendant committed the aggravated battery, great bodily harm, based on his admissions and desire to commit additional crimes against the victim. The State argued that for those same reasons, defendant posed a real and present safety threat. The State noted the facts, including that the victim's pants were down and that defendant beat her so badly that he broke bones in her face. The State asserted that no condition or combination of conditions could mitigate the risk defendant posed. The State acknowledged that defendant had no background, but given the egregious nature of the offense and statements to law enforcement that he would kill the victim when released, the State asked that defendant be detained.

¶ 10    The defense argued the State failed to meet its burden of proof because the victim's injuries did not constitute great bodily harm, where the victim was treated and released from the hospital and later participated in interviews. In addition, the defense argued defendant did not pose a danger because he had never been arrested. In his pretrial assessment, defendant scored 2 on the new criminal activity scale and 1 on the failure to appear scale. The defense maintained these were arguably the lowest scores for his age. Also, defendant's pretrial assessment did not include a "new violent criminal activity flag." The defense argued this single incident was insufficient to conclude defendant posed a danger. The defense maintained GPS was appropriate given the facts and defendant's lack of background.

¶ 11    In mitigation, the defense noted defendant's age, his status as a Cook County resident for 13 years, the fact that he lived with his mother and father and had been at the same address for four years, plus he graduated high school in 2019.

¶ 12    The court found the proof was evident and the presumption great that defendant committed the charged offense and defendant posed a real and present threat to the safety of the victim. The court found the fractured nasal cavity constituted great bodily harm. The court found defendant posed a threat to the victim based on "the nature and violence of this particular attack," as well as defendant's statements, specifically, "I will get out of jail and find that bitch and kill her." The court noted this statement was made after defendant was in police custody. The court observed that once in police custody, "one would hope that whatever anger you had had dissipated, but rather than having it dissipated, rather than you having tempered your statements with law enforcement present, you continued on with the path that you were going to commit a violent act against her at some point in the future, particularly after you were released from jail."

¶ 13    The court thus found that no condition or combination of conditions could mitigate the threat defendant posed to the safety of the victim and that no less restrictive conditions would avoid that threat. The court found that GPS was insufficient, reasoning that GPS had its "faults" because it "relies upon some sort of a social contract and that you're going to honor that GPS." The court found that GPS would not provide warning to protect the victim from a violent act by defendant because the law enforcement response time would not be quick enough. The court added that defendant had attacked the victim from behind and threatened to kill her if released. Therefore, no conditions short of jail could protect the victim from defendant. The court then granted the State's petition. This appeal followed.

¶ 14                                ANALYSIS.

¶ 15    On appeal, defendant first challenges the court's finding that the proof was evident and the presumption great that defendant committed the crime as charged.[3] See 725 ILCS 5/110-6.1(e)(1), (2) (West 2024). All defendants are presumed eligible for pretrial release, and the State maintains the burden of proving by clear and convincing evidence each of the three requirements precluding release, set forth above. 725 ILCS 5/110-2, 110-6.1(e) (West 2024); *In re Tiffany W.*, 2012 IL App (1st) 102492-B, ¶ 12 (noting, clear and convincing evidence is proof that leaves no reasonable doubt in the fact finder's mind regarding the truth of the proposition in question). Moreover, at these hearings, "[d]ecisions regarding release, conditions of release, and detention prior to trial must be individualized, and no single factor or standard may be used exclusively to order detention. Risk assessment tools may not be used as the sole basis to deny pretrial release." 725 ILCS 5/110-6.1(f)(7) (West 2024). We review the trial court's detention decision for an abuse of discretion. See *People v. Whitmore*, 2023 IL App (1st) 231807, ¶ 18; *People v. Inman*,

_____

[3]Defendant does not challenge the second prong, that he poses a real and present threat to the safety of the victim based on the facts of this case.

2023 IL App (4th) 230864, ¶ 11; *People v. Simmons*, 2019 IL App (1st) 191253, ¶ 9 (reviewing the trial court's pretrial release determination for an abuse of discretion); *but see People v. Pitts*, 2024 IL App (1st) 232336, ¶ 29 (applying a manifest weight standard); *People v. Whitaker*, 2024 IL App (1st) 232009, ¶¶ 44-45 (applying a two-tiered approach).

¶ 16    Defendant argues now, as he did below, that the State failed to prove by clear and convincing evidence that the injury he inflicted on the victim qualified as great bodily harm. Whether a defendant has inflicted great bodily harm is generally a question of fact. *People v. Doran*, 256 Ill. App. 3d 131, 136 (1993). Although the term "great bodily harm" has no precise legal definition, it requires a more serious or grave injury than "bodily harm," which includes temporary or permanent lacerations, bruises or abrasions. *Id*. A reviewing court considers the injury actually received, including evidence of the nature and extent of the victim's injury and treatment required. *People v. Reed*, 2018 IL App (1st) 160609, ¶ 44.

¶ 17    The evidence in this case supports that the State proved by clear and convincing evidence that defendant committed aggravated battery, great bodily harm, where he approached the victim from behind and then was caught in the act of beating the victim over a disputed $100 debt. Defendant repeatedly admitted to beating the victim (stating specifically that he was "beating her ass"), he had blood on his hands, and the victim, whose face showed "major bruising and swelling," was treated at the hospital, where she was diagnosed with a "fractured nasal bone." See, *e.g., Doran*, 256 Ill. App. 3d at 135-36 (finding sufficient evidence to support great bodily harm where the victim's injuries included multiple abrasions, lacerations, and a concussion); *cf. People v. Figures*, 216 Ill. App. 3d 398, 402 (1991) (finding insufficient evidence of great bodily harm where the defendant fired a shot at the victim, which pierced the victim's shoe but did not penetrate his skin). Defendant then repeatedly threatened to kill the

victim when released. All these facts suggest a calculated, deliberate, planned, and ferocious attack on the victim. At this point, the State's proffer was sufficient to establish great bodily harm. At trial, the State will have the opportunity to detail the extent of the victim's injuries with medical records, testimony, photos, and any other evidence in support. See *id.*

¶ 18    Defendant nonetheless maintains that the victim did not suffer great bodily harm because she was released from the hospital. However, as set forth, in determining great bodily harm, "the relevant question for the trier of fact to answer is not what the victim did or did not do to treat the injury but what injuries the victim in fact received." *People v. Edwards*, 304 Ill. App. 3d 250, 254 (1999); *People v. Costello*, 95 Ill. App. 3d 680, 686 (1981). A finding of great bodily harm is not dependent on hospitalization. *People v. Jordan*, 102 Ill. App. 3d 1136, 1140 (1981), superseded by statute; see also *People v. Matthews*, 126 Ill. App. 3d 710, 714-15 (1984) (upholding finding of great bodily harm, where the victim was struck on the head with a gun and struck several times on the head and arms with full force blows from a baseball bat, notwithstanding the lack of evidence as to medical attention received). A physical beating may qualify as such conduct that could cause great bodily harm. *People v. Kinnerson*, 2020 IL App (4th) 170650, ¶ 70. Defendant's challenge to the first element of eligibility for pretrial release therefore fails.

¶ 19    Defendant next contends the court's determination that he be detained in county jail pending trial, over a lesser form of confinement, was in error. Defendant thus challenges the third element of eligibility for pretrial release, that "no condition or combination of conditions set forth in subsection (b) of Section 110-10 of this Article can mitigate (i) the real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case," or willful flight. 725 ILCS 5/110-6.1(e)(3) (West 2024).

¶ 20     Here, the trial court acknowledged a lesser form of detention, like GPS monitoring, but found it to be inappropriate given the serious nature of the crime defendant committed. The court noted that GPS was insufficient because it "relies upon some sort of a social contract and that you're going to honor that GPS." The court found that GPS would not provide warning to protect the victim from a violent act by defendant because the law enforcement response time would not be quick enough. It noted that defendant had attacked the victim from behind and threatened to kill her if released. Defendant also made these continued threats while in police custody, which betrayed a lack of self-control. The court thus implicitly if not expressly found defendant was incapable of honoring the requirements of release, and it was highly probable the victim would suffer violence if he were released. All this was notwithstanding defendant's mitigating evidence, including his lack of a criminal background. Therefore, the court concluded that no conditions short of jail could protect the victim from defendant. Its written order largely reflected these findings.[4]

¶ 21     Consistent with the Act, the court weighed the nature and circumstances of the specific offense charged, together with the weight of the evidence strongly supporting that defendant in fact committed the aggravated battery, defendant's history and characteristics, and the nature and seriousness of the threat to the safety of the victim if defendant were released. See 725 ILCS 5/110-5, 110-6.1 (West 2024); *People v. Andino-Acosta*, 2024 IL App (2d) 230463, ¶ 19 (considering the trial court's written findings in conjunction with its oral findings).[5] The court clearly found the serious nature of the offense, and that it involved violence, surprise, and

---

[4]The written order states, "GPS not appropriate due to police response times. D attacked V from behind. V not able to protect themselves from D even with advanced notice."

[5]"We note that when determining whether a determination that no less restrictive means will mitigate the real and present threat to a person or the community, this court has examined that decision in light of the same factors in section 110-6.1 that the trial court uses to make the initial determination that the defendant poses a real and present threat." *People v. Saucedo*, 2024 IL App (1st) 232020, ¶ 49.

continued verbal threats, outweighed any mitigating evidence and warranted detention. See 725 ILCS 5/110-6.1(f)(7) (West 2024) (noting, decisions regarding detention must be individualized and no single factor may be used exclusively to order detention); *People v. Carpenter*, 2024 IL App (1st) 240037, ¶ 19 (noting, the facts proffered may satisfy "the specific articulable facts of the case" standard, even if they are coextensive with the elements of the charged offense); *People v. Cox*, 377 Ill. App. 3d 690, 709 (2007) (noting, the seriousness of the crime is the most important factor in fashioning a sentence); *cf. People v. Stock*, 2023 IL App (1st) 231753, ¶ 18 (the bare allegations that defendant committed a violent offense are insufficient to justify pretrial detention). Thus, defendant's contention that "nothing in the record" indicates defendant "would be likely to violate GPS monitoring" is disingenuous at best.

¶ 22    The court determined defendant was unlikely to comply with a lesser form of detention. See 725 ILCS 5/110-5(a) (West 2024). That another court might reach a different conclusion, or that the Office of Statewide Pretrial Services did reach a different conclusion, does not mean that the trial court's ruling was an abuse of discretion. *People v Wells*, 2024 IL App (1st) 232453, ¶ 24. Therefore, we cannot say the court's determination that defendant must remain in county jail pending trial was arbitrary, fanciful, or unreasonable, or that no person could agree with the court's determination. See *Simmons*, 2019 IL App (1st) 191253, ¶ 9 (reciting standard for abuse of discretion).

¶ 23    We likewise reject defendant's argument that the State failed to meet its burden of proof by clear and convincing evidence as to the third element. The State acknowledged that defendant had no background but given the egregious nature of the offense and statements that he would kill the victim if released, the State asked that defendant be detained due to his threat level. Implicit in the State's argument is that defendant could not be trusted on GPS monitoring on that

9

basis. The court adopted this reasoning. Contrary to defendant's contention otherwise, this argument addressed the specific facts of this case.

¶ 24                                        CONCLUSION

¶ 25     For the foregoing reasons, we affirm the trial court's judgment. We cannot think of a better place for defendant to be than incarcerated in jail while awaiting trial.

¶ 26     Affirmed.